# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| McTHREENA PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18-cv-00779-SGC |
| ) | |
| JOSE OLIVA, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER[1]

This matter arises out of a May 28, 2016 traffic accident in Jefferson County, Alabama. (Doc. 1). Presently pending is the motion for partial summary judgment filed by the defendants, Jose Oliva and AJ Lines, Inc. (Doc. 24). The motion is fully briefed and ripe for adjudication. (Docs. 25–28). As explained below, the motion is due to be granted; the plaintiff's claims for wantonness and negligent and/or wanton entrustment, hiring, training, and supervision are due to be dismissed.

**I.   SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[1] The parties have consented to dispositive magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 16).

law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## II.     FACTS

Oliva obtained his commercial driver's license in approximately 2015 after completing a truck driving school in Florida. (Doc. 25 at 4). Prior to obtaining his CDL, Oliva received two traffic citations while driving a non-commercial vehicle—

one for failure to maintain lane in 2011 and one for his role in a 2012 car accident. (Doc. 25-3 at 17–18, 75–76).

Oliva began working for AJ Lines in late 2015 or early 2016. (Doc. 25 at 3). His job with AJ Lines was his first as a truck driver. (Doc. 26 at 3). At some point, he received an out-of-service order for failing to keep his commercial driving logbook up to date. (Doc. 25 at 4). He did not receive any citations for moving violations while driving a commercial vehicle before the subject accident. (*Id.*).

On May 28, 2016, Oliva was driving a fully-loaded tractor-trailer owned by AJ Lines and was at all times acting in the line and scope of his employment. (Doc. 25 at 2; Doc. 26 at 4). Oliva testified he was traveling eastbound in the right lane of Highway 78 in Jefferson County, Alabama at approximately 40 to 45 miles per hour. (Doc. 25 at 2). The portion of Highway 78 where the accident occurred has several traffic lights and is close to a Walmart. (Doc. 25-3 at 8-9; Doc. 26 at 4). This was the first time Oliva had ever traveled on this road. (Doc. 25-3 at 8-9).

The plaintiff, McThreena Parker, was a passenger in the car directly in front of Oliva's truck. (Doc. 25 at 3). Brush along the side of the highway partially obstructed Olivia's view of an upcoming traffic light. (Doc. 25-3 at 10). Then, when he was approximately 225 feet behind the plaintiff's car, he saw the traffic light was yellow. (Doc. 25 at 3). The plaintiff's car came to a complete stop at the intersection. (*Id.*). Oliva applied his brakes, which locked up, and the truck struck

the plaintiff's car from behind a few seconds after the plaintiff's car stopped. (*Id.*; Doc. 26 at 4). Patricia Mauldin, another passenger in the car who saw the truck coming from behind in the rearview mirror. During her deposition, Mauldin initially estimated the truck was travelling at 80 miles per hour; she subsequently testified she did not know the truck's speed, but believed it was speeding when it struck the car. (Doc. 27-2 at 8-9).

Shortly after the accident, AJ Lines went out of business and shut down. (Doc. 27-1 at 7). On June 2, 2016, the plaintiff's attorney sent a preservation letter to the members of AJ Lines asking them to preserve several documents "routinely maintained in accordance with State and Federal regulations and in the routine course of the business of a commercial vehicle operation" for purposes of discovery in potential litigation. (Doc. 27-1 at 49). Almantas Rudzionis, the owner and general director of AJ Lines, received the letter on June 7, 2016. (Doc. 26 at 2). But Rudzionis could not locate or produce any documents related to the hiring, training, and supervision of Oliva. (*Id.* at 3). Rudzionis called Grazima Kiaunyte, who was AJ Lines' safety director responsible for maintaining those records before the company shut down; however, Kiaunyte did not answer Rudzionis's phone call, and Rudzionis did not know where Kiaunyte worked after AJ Lines shut down. (Doc. 27-1 at 8; Doc. 28 at 2). AJ Lines had moved business locations on several

occasions, so Rudzionis suspected the records were lost during one of those moves. (Doc. 27-1 at 7–8; Doc. 28 at 2).

## III. DISCUSSION

The defendants move for summary judgment on the plaintiff's claims for wantonness and negligent and/or wanton entrustment, hiring, training, and supervision. (Doc. 24 at 1). Substantive Alabama law governs these claims, which are addressed in turn. But before addressing the merits of the defendants' motion, the court first addresses the plaintiff's contention the motion should be denied as a sanction for spoliation of evidence and failure to produce evidence during discovery.

### A. <u>Spoliation</u>

The plaintiff argues the defendants have committed spoliation—*i.e.*, they suppressed or destroyed evidence—warranting the denial of their motion for summary judgment. (Doc. 26 at 6). According to the plaintiff, the defendants failed to produce documents pertaining to Oliva's hiring, training, and employment at AJ Lines, as well as AJ Lines' internal investigation of the accident. (*Id.* at 8–9). The plaintiff argues the defendants knew they were required to preserve these documents because: (1) the Federal Motor Carrier Safety Act required it; and (2) they received a letter from the plaintiff's attorney nine days after the accident asking them to preserve the documents in anticipation of potential litigation. (Doc. 27-1 at 49–53).

The defendants do not deny they had the requested documents in their

possession at some point—AJ Lines' Rule 30(b)(6) witness, Rudzionis, admitted as much during his deposition. (Doc. 27-1 at 10). Instead, the defendants argue they were unable to locate the documents. (Doc. 28 at 6). Rudzionis testified: (1) he searched for the documents but failed to find them; (2) AJ Lines' safety director responsible for maintaining the documents would not answer his calls; (3) he did not know where the safety director then worked; and (4) AJ Lines may have lost the documents during one of its moves. (Doc. 27-1 at 7–8). Based on Rudzionis's testimony, the defendants contend no spoliation occurred. (Doc. 28 at 6–7).

"Spoliation is 'defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument.'" *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (quoting *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003)). "In some circumstances, a party's 'spoliation of critical evidence may warrant the imposition of sanctions.'" *Id.* (quoting *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005)). "Because spoliation is an evidentiary matter, 'federal law governs the imposition of spoliation sanctions.'" *Id.* (quoting *Flury*, 427 F.3d at 944).

As a sanction for spoliation, the court may instruct the jury that it can infer the destroyed evidence would have been unfavorable to the party responsible for the destruction. *See Flury*, 427 F.3d at 945. "At the summary judgment stage, the spoliation doctrine provides a basis for denying a motion for summary judgment

where there is sufficient probative evidence for a jury to find an act of spoliation and to draw the inference derived from such an act." *Watson v. Edelen*, 76 F. Supp. 3d 1332, 1343 (N.D. Fla. 2015); *see also Stanton v. Nat'l R.R. Passenger Corp.*, 849 F. Supp. 1524, 1528 (M.D. Ala. Apr. 19, 1994) (giving prejudiced party the adverse inference on summary judgment upon determining a question of fact existed as to whether opposing party committed sanctionable spoliation).

When deciding whether to impose sanctions, courts consider the following factors: (1) "whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured"; (2) "the practical importance of the evidence"; (3) "whether the spoliating party acted in bad faith"; and (4) "the potential for abuse if sanctions are not imposed." *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018) (citing *Flury*, 427 F.3d at 945).

However, "[s]poliation sanctions—and in particular adverse inferences—cannot be imposed for negligently losing or destroying evidence." *Tesoriero*, 965 F.3d at 1184. "Indeed, 'an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith.'" *Id.* (quoting *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)). Bad faith, in the context of spoliation, "generally means destruction for the purpose of hiding adverse evidence." *Id.* (quotation marks omitted). "This consideration is key

7

in evaluating bad faith because the party's reason for destroying evidence is what justifies sanctions (or a lack thereof)." *Id.*  The plaintiff must therefore establish the defendants destroyed the requested documents in bad faith.  *See id.* at 1186 ("Mere negligence in losing or destroying evidence is not enough to warrant sanctions.") (citing *Bashir*, 119 F.3d at 931).

In *Tesoriero* the Eleventh Circuit surveyed its prior holdings to illustrate the differences between bad faith and mere negligence.  *See id.* at 1184–85.  Summarizing its decision in *Bashir*, the Eleventh Circuit explained: "Because plaintiffs produced no evidence that the [defendant] train company purposefully lost or destroyed the [requested evidence], we concluded that there was no showing of bad faith."  *Id.* (citing *Bashir*, 119 F.3d at 931–32).  Conversely, in *Flury*, "bad faith was evident, and spoliation sanctions were appropriate."  *Id*. (citing *Flury*, 427 F.3d at 945).  In *Flury*, which centered on a vehicle's malfunctioning airbags, the plaintiff was fully aware the defendant wished to inspect the vehicle but nevertheless allowed it to be sold for salvage—a purposeful act that could not be reasonably explained as not involving bad faith.  *See id.* (citing *Flury*, 427 F.3d at 945).  *Tesoriero* also favorably cited a Florida district court decision "concluding that bad faith can be established by circumstantial evidence only when the 'act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.'"  *Id.* (quoting *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077,

8

2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009)).

Here, while the plaintiff produced evidence showing the defendants had a duty to preserve the requested documents in anticipation of litigation, "anticipation of litigation is not the standard for spoliation sanctions—bad faith is." *Id.* at 1183. Just as in *Bashir*, the plaintiff produced no evidence that AJ Lines "purposefully lost or destroyed" the requested documents; thus, "there [is] no showing of bad faith." *Id.* (citing *Bashir*, 119 F.3d at 931–32). Furthermore, the act causing the loss of the documents *can* be credibly explained as not involving bad faith. AJ Lines presumably misplaced or accidently discarded the documents during one of its moves—an act indicating negligence, not bad faith. Accordingly, the plaintiff has failed to show bad faith through either direct or circumstantial evidence, and the court declines to impose spoliation sanctions.

### B. Wantonness

Alabama law defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others." ALA. CODE § 6–11–20(b)(3). As explained by the Alabama Pattern Jury Instructions, a defendant's conduct is wanton if he "consciously acts or fails to act with a reckless or conscious disregard of the rights or safety of others, and [] is aware that harm will likely or

probably result." 2 Ala. Pattern Jury Instr. Civ. § 29.00 (3d ed.). As explained by the Alabama Supreme Court:

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury.

*Carter v. Treadway Trucking, Inc.,* 611 So. 2d 1034, 1035 (Ala. 1992) (quotation marks omitted) (*overruled on other grounds by Robertson v. Gaddy Electrical and Plumbing, LLC*, 53 So. 3d 75 (Ala. 2010)). Of course, a plaintiff claiming wantonness need not prove the defendant had a "specific design or intent to injure" him. *Joseph v. Staggs,* 519 So. 2d 952 (Ala. 1988). As this court has noted, in the context of a traffic accident, a plaintiff must show the defendant was driving "in a manner likely to result in injury. . . . However, an error in judgment is insufficient to demonstrate that an alleged tortfeasor has acted in a manner likely to result in injury." *Stephens v. Snow*, No. 16-442-SGC, Doc. 24 at 1 (N.D. Ala. *entered* Sept. 25, 2017).

"Wantonness is a question of fact for the jury, unless there is a total lack of substantial evidence from which a jury could reasonably infer wantonness." *Cash v. Caldwell,* 603 So. 2d 1001, 1003 (Ala. 1992). "The most crucial element of wantonness is knowledge, and while that element need not be shown by direct

10

evidence it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference . . . it may not be left to the conjecture or speculation of the jury." *Roberts v. Brown,* 384 So. 2d 1047, 1048 (Ala. 1980).

Considering the facts of this case under the summary judgment standard, the plaintiff has failed to present substantial evidence from which a jury could infer Oliva was wanton. First, the plaintiff presented no evidence indicating Oliva "consciously act[ed] or fail[ed] to act," solely by speeding, in a manner likely to cause injury. 2 Ala. Pattern Jury Instr. Civ. § 29.00 (3d ed.). Regarding Oliva's speed, Patricia Mauldin, a passenger in the same vehicle as the plaintiff, testified as follows:

> Q: Tell me what you remember about the accident happening.
>
> A: I remember a lot. When we were coming, you know, like I said, right there by the traffic light. And it was – we were going like this, and then a light turned red. I was looking out the rearview mirror, and I was like – I said, "Tina, an 18-wheeler coming, 18-wheeler coming. He was coming fast, fast. Looked like he ain't going to stop." I mean, he was like, shew, real fast. . . .
>
> * * *
>
> Q: And you saw [Oliva]'s truck in the rearview mirror before the impact?
>
> A: Yes I did.
>
> Q: And you were telling Tina, "18-wheeler is coming"?

A: Yeah. He was flying. I mean, he came out of nowhere, and he was flying.

Q: How fast do you think he was going?

A: Probably 80 miles. I mean, he was flying.

Q: Is that a guess or – you say 80 miles per hour.

A: Look, I'm not confused at all, okay? He was flying.

Q: Okay. And I understand that. You say 80.

A: I said could have been. I'm not saying – I really don't know. I know he was flying. He was going over the speed limit.

Q: You believe that?

A: Yes.

(Doc. 27-2 at 8, 9).

Conversely, Oliva testified: (1) he was traveling approximately 45 miles per hour as he approached the accident site; (2) his view of the accident site initially was partially obstructed by brush on the side of the road; (3) he was approximately three tractor-trailer lengths, or 225 feet, behind the plaintiff when he saw her apply the brakes; (4) he immediately applied his brakes, which locked up prior to impact; and (5) he was traveling approximately 15 miles per hour at the point of impact. (Doc. 25-3 at 9). It is uncontested that this was the first time Oliva had ever traveled this section of road. (*Id.* at 8-9).

Mauldin's testimony, taken as true under the summary judgment standard, establishes Oliva was going over the speed limit before he applied his brakes. While Mauldin initially estimated Oliva was traveling at 80 miles per hour prior to the accident, she subsequently testified Oliva was "flying," but she did not know how fast he was traveling. However, "speed alone does not amount to wantonness." *Serio v. Merrell, Inc.*, 941 So. 2d 960, 966 (Ala. 2006). Speed must be "coupled with other circumstances" to show wantonness. *Id.* (quotation marks omitted); *Barnett v. Franklin Logistics, LLC*, No. 05-1922-RDP, 2006 WL 8436994 at *3 (N.D. Ala. July 25, 2006) (under Alabama law, speeding alone is insufficient to show wantonness). In *Hicks v. Dunn,* the defendant driver was driving much faster than the posted speed limit and did not slow down despite knowing there was a busy restaurant on the other side of a hill he was cresting that obstructed his view. 819 So. 2d 22, 24 (Ala. 2001). On those facts, the Alabama Supreme Court found substantial evidence of wantonness existed to warrant its submission to the jury. *Id.*

Here, the plaintiff has not established the existence of circumstances other than speed to support a reasonable inference of wantonness. Unlike the defendant in *Hicks*, Oliva had not previously traveled this route and was unfamiliar with the area where the accident occurred. There is no evidence Oliva had any particularized knowledge of traffic lights in the area or that roadside brush partially obstructed his view of the upcoming traffic light. (Doc. 25-3 at 9–10, 12, 15). Indeed, Oliva's

13

knowledge of the area only came after the fact. *See Roberts,* 384 So. 2d at 1048 (knowledge, the "most crucial element of wantonness," cannot rest on "conjecture or speculation of the jury"). Accordingly, the rationale in *Hicks* does not apply to this case.

For the foregoing reasons, the court concludes the plaintiff has failed to submit evidence showing a genuine issue of material fact as to wantonness. Accordingly, the defendants are entitled to judgment as a matter of law on this claim.

### B.     Negligent/Wanton Entrustment, Hiring, Training, and Supervision

In Alabama, claims for negligent entrustment, hiring, training, and supervision all share a common element: the plaintiff must show the tortfeasor employee was incompetent. *Halford v. Alamo Rent–A–Car, LLC*, 921 So. 2d 409, 412 (Ala. 2005); *Johnson v. Brunswick Riverview Club, Inc.*, 39 So. 3d 132, 140 (Ala. 2009). The same is true regarding similar claims premised on wantonness. *See Vines v. Cook*, No. 15-0111, 2015 WL 8328675, at *6 (S.D. Ala. Dec. 8, 2015); *Bruck v. Jim Walter Corp.*, 470 So. 2d 1141, 1144 (Ala. 1985). In Alabama, incompetence is the "state or fact of being unable or unqualified to do something." *Halford*, 921 So. 2d at 415. Alabama courts measure a driver's competence "by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Id.* at 414–15. Additionally, "[n]egligence is not synonymous with incompetency. The most competent may be negligent. . . . *But one who is habitually negligent may on that*

14

*account be incompetent*." *Pritchett v. ICN Medical Alliance, Inc*., 938 So. 2d 933, 941 (Ala. 2006) (alteration incorporated) (emphasis in original).

Oliva's driving history does not demonstrate he was incompetent. He received one traffic ticket in 2011 and was involved in one traffic accident in 2012. These two incidents, during which Olivia was not operating a commercial vehicle, occurred at least three years before AJ Lines hired Oliva. While working for AJ Lines, he received only one out-of-service order for failing to maintain his logbook. This infraction was not a moving violation. Courts applying Alabama law have granted summary judgment—based on plaintiffs' failure to show incompetence—where tortfeasors had driving records similar to (and worse than) Oliva's. *See, e.g.*, *Vines*, 2015 WL 8328675, at *6 (one speeding ticket and one accident over previous four years); *Askew v. R&L Transfer, Inc.*, 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009) (two moving violations and four minor accidents over previous nine years); *Lanham v. Gnewuch*, No. 13-1358-VEH, 2015 WL 3966480, *8–9 (N.D. Ala. Jun. 30, 2015) (two preventable accidents in previous two years); *Thedford*, 813 So. 2d at 912 (one similar accident three months prior); *Pryor v. Brown & Root USA, Inc*., 674 So. 2d 45, 52 (Ala. 1995) (two speeding tickets and a suspended DUI charge over ten years).

Other than Oliva's driving history, the plaintiff has produced no evidence to show Oliva was incompetent when AJ Lines hired, trained, supervised, and entrusted

him with a vehicle. The plaintiff apparently recognizes she lacks evidence to support these claims but asserts the defendants' spoliation of evidence prevented her from doing so. (Doc. 26 at 13–14). However, because the court has already declined to impose spoliation sanctions, the plaintiff cannot rely on spoliation to overcome summary judgment.

For the foregoing reasons, there are no genuine issues of material fact as to the plaintiff's claims for negligent and/or wanton entrustment, hiring, training and supervision. The defendants are entitled to judgment as a matter of law on those claims.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion for partial summary judgment is due to be **GRANTED**.  (Doc. 24).  The plaintiff's claims for wantonness, as well as the claims for wanton and/or negligent entrustment, hiring, training, and supervision, are **DISMISSED**.

**DONE** this 15th day of October, 2020.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE